UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ASHON McLEAN,
    Plaintiff,

v.

WE TRANSPORT,
    Defendant.

No. 3:22-cv-00437 (SRU)

## ORDER ON DEFENDANT'S MOTION TO DISMISS

This case arises out of an employment dispute between Ashon McLean ("McLean") and his former employer, WE Transport. McLean alleges that WE Transport discriminated against him on account of his gender and sexual orientation following an incident between McLean and another employee. *See* generally Am. Compl., Doc. No. 12. WE Transport has moved to dismiss the complaint. *See* Def. Mot. to Dismiss, Doc. No. 28; Def. Mem. in Supp. of Mot. to Dismiss ("Def. Mot."), Doc. No. 28-3. For the reasons that follow, the unopposed motion is **granted**.

**I.    BACKGROUND**

    A.    Factual Background

McLean is a gay male, residing in Bridgeport, Connecticut. *See* Am. Compl., Doc. No. 12, at ¶ 1. On August 29, 2013, McLean was hired by WE Transport to be a bus driver. *Id.* at ¶¶ 6–7. WE Transport is a company that owns and operates school buses. *Id.* at ¶ 2.

While working at WE Transport, McLean became friends with a female co-worker ("Doe") that worked in dispatch. *Id.* at ¶ 8. McLean referred to her as his work wife, and the two would text each other on holidays, wish each other a happy birthday, and have other personal phone and text conversations. *Id.*

On or about April 6, 2021, McLean texted Doe. *Id.* at ¶ 9. Later that day, the two were talking, and the topic of rape came up. *Id.* During that exchange, Doe stated that, "[a]ll rapists must die," and "[w]hen a woman says no, she means no." *Id.* McLean then jokingly asked Doe if she would have said "yes" to him. *Id.* McLean intended his comment to be a joke because he is "homosexual and not interested in females." *Id.*

WE Transport fired McLean the next day. *Id.* at ¶ 10. McLean contacted his union representative regarding the termination. *Id.* The union representative asked McLean if he asked Doe for sex. *Id.* McLean answered in the negative and told the union representative that he had not realized that he offended Doe. *Id.*

McLean avers that he was terminated and/or coerced to resign because of his gender and sexual orientation, and he has suffered damages as a result. *Id.* at ¶¶ 11–13.

B.   Procedural Background

McLean filed his original complaint in this action on March 24, 2022. *See* Compl., Doc. No. 1. I granted his motion to proceed *in forma pauperis*. *See* Mot. for Leave, Doc. No. 8; Order, Doc. No. 11. Pursuant to 28 U.S.C. § 1915(e)(2), I dismissed McLean's original complaint without prejudice on the ground that McLean failed to adequately plead that he had exhausted his administrative remedies. *See* Order, Doc. No. 11.

McLean filed an amended complaint in August 2022. *See* Am. Compl., Doc. No. 12. Liberally construed, McLean alleges claims of gender discrimination, sexual orientation discrimination and hostile work environment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60 *et seq.*

On February 28, 2023, WE Transport moved to dismiss the amended complaint. *See* Def. Mot. to Dismiss, Doc. No. 28. An objection was due on March 21, 2023. *Id.* McLean moved for an extension of time. *See* Pl. Mot. for Extension of Time, Doc. No. 29. That motion was granted, and the deadline was extended to April 21, 2023. Order, Doc. No. 33. On April 19, 2023, McLean filed on the public docket a two-page email thread between him and the Federal *Pro Se* Legal Assistance Program. *See* Pl. Notice, Doc. No. 34. Because it was unclear from the notice if McLean was requesting an extension of time, I again extended the deadline for McLean to file an objection to May 24, 2023. *See* Order, Doc. No. 35. To date, no objection has been filed.

## II.   STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they

3

must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (cleaned up). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (cleaned up).

**III.      DISCUSSION**

McLean's central argument is that, but for his gender and sexual orientation, he would not have been terminated, and instead disciplined less severely. Because McLean fails to allege facts to support his claim of discriminatory animus, his argument fails.

A.      <u>Gender and Sexual Orientation Discrimination Claims</u>

1.      *Relevant Law*

Title VII prohibits discrimination against an employee based on that employee's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Claims of discrimination under Title VII are analyzed under the familiar three-part framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 74–75 (2d Cir. 2016) ("Claims of … discrimination under Title VII … are analyzed under the familiar burden-shifting framework established in *McDonnell Douglas* ….").

CFEPA provides in pertinent part that, "[i]t shall be a discriminatory practice in violation of this section … [f]or an employer ... to discharge from employment any individual … because of the individual's … sex …." Conn. Gen. Stat. § 46a–60(a)(1). "CFEPA is largely coextensive with Title VII, and in enforcing Connecticut's anti-discrimination statutes, Connecticut courts

look to federal precedent by applying the standards used by federal courts in evaluating discrimination claims under Title VII." *Cintron v. Atticus Bakery, LLC*, 242 F. Supp. 3d 94, 105 (D. Conn. 2017) (citing *Brittell v. Department of Correction*, 247 Conn. 148, 164 (1998)). Indeed, the Connecticut Supreme Court has expressly noted that "the analytical framework set forth … in *McDonnell Douglas* … is used to determine whether a complainant may prevail on a claim of disparate treatment under [Connecticut] law." *Department of Transportation v. Commission on Human Rights and Opportunities*, 272 Conn. 457, 463 n.9 (2005).

Under the *McDonnell Douglas* framework, a plaintiff must first show that "(1) [he] is a member of a protected class; (2) [he] is qualified for [his] position; (3) [he] suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802).

Although claims of discrimination are governed by the burden-shifting framework established in *McDonnell Douglas*, a plaintiff is not required to plead the elements of a prima facie case to survive a motion to dismiss. *Barker v. UBS AG*, 2011 WL 283993, at *5 (D. Conn. Jan. 26, 2011). Rather, a plaintiff "may withstand a motion to dismiss by providing a short and plain statement of the claim that shows that [he] is entitled to relief and that gives [the defendant] fair notice of the … discrimination claim and the grounds upon which it rests." *Munoz-Nagel v. Guess, Inc.*, 2013 WL 6068597, at *1 (S.D.N.Y. Nov. 15, 2013) (cleaned up). That said, courts do use the *McDonnell Douglas* standard as a guidepost when determining whether the plaintiff has provided the defendant with fair notice of his claim, as required by the Federal Rules of Civil Procedure. *Barker*, 2011 WL 283993, at *5.

WE Transport appears to concede—or at least does not contest for purposes of its motion—that McLean (1) is a member of a protected class as a gay[1] male[2]; (2) was qualified for the position he held as a bus driver; and (3) suffered an adverse employment action when he was terminated. *See generally* Def. Mot., Doc. No. 28-3. However, WE Transport argues that McLean has not plausibly alleged that WE Transport's actions occurred under circumstances giving rise to an inference of discrimination. I agree.

### 2. Application

At the motion to dismiss stage, "allegation of facts supporting a minimal plausible inference of discriminatory intent suffices as to this element of the claim." *Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016). This is a "low bar" and includes, but is not limited to "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Lewis v. Roosevelt Island Operating Corp.*, 2017 WL 1169647, at *5 (S.D.N.Y. Mar. 28, 2017) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015)); *see also Crawley v. Macy's Retail Holdings, Inc.*, 2016 WL 6993777, at *7 (S.D.N.Y. Nov. 29, 2016) (at the motion to dismiss stage, a plaintiff need only "give plausible support to a *minimal inference* of discriminatory motivation") (quoting *Littlejohn*, 795 F.3d at 111)).

---

[1] As the Supreme Court recently made explicit, "[a]n employer who fires an individual merely for being gay or transgender defies [Title VII]." *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1754 (2020).

[2] Although men are not traditionally the protected class under Title VII, they may still assert reverse discrimination claims. *Boandl v. Geithner*, 752 F. Supp. 2d 540, 570 (E.D. Pa. 2010); *see also Tappe v. All. Cap. Mgmt. L.P.*, 177 F. Supp. 2d 176, 182 (S.D.N.Y. 2001) ("In the Title VII context, the Supreme Court has … steadfastly held male plaintiffs to the same standard as female plaintiffs—no more or less.").

Put simply, McLean's disparate treatment claims fail to satisfy the pleading standards. As alleged, McLean jokingly asked a female colleague if she would say "yes" to having sex with him during a conversation about rape. McLean was fired the next day. Although McLean may believe that it was unfair to be terminated under the circumstances, he does not allege any facts to show that the basis for the "unfairness" was discriminatory. For example, McLean has advanced no specific factual allegations indicating what WE Transport did or said to suggest that his alleged termination was motivated by his sex or sexual orientation. Indeed, the amended complaint itself suggests that McLean's termination was motivated by reasons that were not discriminatory, including an allegation that McLean told his union representative that he did not realize he offended his colleague by asking if she would have said yes to him.

Of note, the absence of comparators is also significant. Where a plaintiff tries to establish a prima facie case by pointing to more favorable treatment of other employees, as is the case here, "those employees must have a situation sufficiently similar to [the] plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001). Aside from McLean's own subjective beliefs, no such allegations relating to similarly situated individuals are pled here. Indeed, McLean only alleges in conclusory fashion that he is "aware that if he had been female and/or straight[,] he would have not been terminated." Am. Compl., Doc. No. 12, at ¶ 12. But without providing the factual basis for that knowledge, McLean's allegations are insufficient to move the allegations out of the speculative realm. *See Karim-Seidou v. Hosp. of St. Raphael*, 2012 WL 6628886, at *5 (D. Conn. Dec. 19, 2012) ("Plaintiff must point to more than his subjective belief he was discriminated against, and an inference of discrimination cannot be drawn from thin air.") (cleaned up).

Ultimately, McLean has failed to plead sufficient factual matter under *Iqbal* to render plausible his claim that he was terminated because of his gender and/or sexual orientation. Accordingly, his gender and sexual orientation discrimination claims under both Title VII and CFEPA are dismissed pursuant to Rule 12(b)(6), and I **grant** WE Transport's motion with respect to McLean's discrimination claims.

B.  Hostile Work Claim

WE Transport further argues that McLean has not alleged facts demonstrating continuous and pervasive discriminatory animus in the workplace to support his hostile work environment claim under Title VII or CFEPA. I agree.

1.  *Relevant Law*

In order to prevail on a hostile work environment claim, a plaintiff must show that "the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" and "that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (cleaned up). "This test has objective and subjective elements: the misconduct must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Id.* at 374 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Among the factors to weigh when determining whether an environment is sufficiently hostile are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. "As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be

deemed pervasive.'" *Alfano*, 294 F.3d at 374 (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)).

Similarly, to state a claim for a hostile work environment under the CFEPA, a plaintiff must allege facts to show that the workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Patino v. Birken Mfg. Co.*, 304 Conn. 679, 699 (2012) (cleaned up). Although Connecticut courts "are not bound by it, [they also] review federal precedent concerning employment discrimination for guidance in enforcing [Connecticut's] own antidiscrimination statutes", including hostile work environment claims. *Heyward v. Judicial Dept.*, 178 Conn. App. 757, 765 (2017).

        2.     Application

The sole factual allegation in the amended complaint detailing discrimination is the allegation that McLean was disciplined more harshly because of his gender and sexual orientation. For reasons already articulated, discriminatory intent cannot be plausibly inferred from only McLean's subjective beliefs.

But even if I were to accept that single allegation as true, it is insufficient to meet the requirement that the workplace be "an abusive working environment." Not once does McLean allege that he was subjected to any kind of discrimination or harassment during his tenure with WE Transport. To the contrary, McLean's allegations imply that he had a cordial relationship with at least one of his colleagues, noting that Doe was his "work wife."

In sum, McLean's allegations do not establish that his workplace was "permeated" with discriminatory intimidation that was so severe and pervasive as to alter McLean's working conditions. I therefore **grant** WE Transport's motion with respect to McLean's hostile work

environment claims under both Title VII and CFEPA, and McLean's hostile work environment claims are dismissed pursuant to Rule 12(b)(6).

## IV.     CONCLUSION

For the foregoing reasons, WE Transport's motion to dismiss, doc. no. 28, is **granted**. In light of McLean's *pro se* status, he is granted leave to file an amended complaint by **September 7, 2023**. McLean is not required to file an amended complaint. But if he fails to do so, his claims will be dismissed with prejudice, and the Clerk will be instructed to close the case.

Should McLean choose to file an amended complaint, he is ordered to cure the deficiencies identified in this order.[3] McLean is advised that an amended complaint is intended to completely replace the prior complaint in the action, and thus it "renders [the original complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977). Therefore, no portion of any prior complaint shall be incorporated into his amended complaint by reference.

So ordered.

Dated at Bridgeport, Connecticut, this 10th day of August 2023.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

---

[3] McLean should be mindful of the other arguments raised in the defendant's motion to dismiss that I did not address in this Order.